# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
THE NATIONAL FOOTBALL LEAGUE; and :
NFL PROPERTIES LLC, : CIVIL ACTION NO. 13-CV-2572 (LGS)
:
Plaintiffs, :
:
v. : [FILED UNDER SEAL PURSUANT TO
: 15 U.S.C. § 1116]
GONG SUNMEI d/b/a NFL-2013.COM; WENG :
DONG d/b/a :
NEWYORKGIANTSPROSHOP.COM; SU :
DANDAN d/b/a NFLGOODSHOP.COM; :
XIONGJIN CHEN d/b/a :
NFLNIKEJERSEYSM.COM; MA QIFENG d/b/a :
2013-NEW-JERSEYS.COM, *et al.*, :
:
Defendants. :
------------------------------------- X

**DECLARATION OF JEFFREY H. WARSHAFSKY IN FURTHER SUPPORT OF PLAINTIFFS' TEMPORARY RESTRAINING ORDER, ORDER TO DISABLE CERTAIN WEBSITES, ASSET RESTRAINING ORDER, EXPEDITED DISCOVERY ORDER, ORDER ALLOWING SERVICE BY ELECTRONIC MAIL, AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**

I, JEFFREY H. WARSHAFSKY, under penalty of perjury, declares and says:

1. I am an attorney licensed to practice law in the State of New York and before the bars of the Southern and Eastern Districts of New York. I am an associate in the law firm of Proskauer Rose LLP ("Proskauer"), counsel to Plaintiffs THE NATIONAL FOOTBALL LEAGUE and NFL PROPERTIES LLC (collectively, "NFL" or "Plaintiffs").

2. I submit this declaration as required by the Court's Temporary Restraining Order, Order to Disable Certain Websites, Asset Restraining Order, Expedited Discovery Order, Order Allowing Service by Electronic Mail, and Order to Show Cause for Preliminary Injunction, dated

April 18, 2013 (collectively, the "Order"), which directs the NFL's counsel to submit a declaration within ten (10) business days after the Order was executed setting forth: (a) the date(s) on which the Order was executed, (b) the date(s) and means with which the Defendants were served with a copy of the Order, and (c) a description of the domain names, websites, and other assets that were disabled and/or restrained. For the convenience of the Court, I also provide certain additional Southern District Orders that enter preliminary injunctive relief in analagous situations of a large group of clustered websites selling counterfeit goods.

**Service of Defendants**

3. Based on the steps taken to serve the summons, the complaint, and the papers in support of the NFL's pending motion – all of which are detailed below – and the evidence presented by the NFL's outside investigators concerning how all 1,476 Infringing Websites (as defined in the Complaint) are part of a related network, as reflected in paragraph 38 of the April 12, 2013 Declaration of Julian Grijns and paragraph 35 of the April 15, 2013 Declaration of Paul Dagum, the NFL's counsel believes that all defendants listed in the Complaint and Schedule A in this action and incorporated herein by reference (collectively, "Defendants") have adequately been served and notified of this action.

4. Specifically, on April 19, 2013, I served true and correct copies of the Order, Complaint, Summons, and supporting papers that have been filed with the Court upon Defendants, by registered e-mail to the e-mail addresses listed in Exhibit 3 to the April 18, 2013 Order.

5. According to the Delivery Receipts I received from RPost (an online service which provides valid proof of authorship, content, delivery, and official time sent and received), the clear majority of these addresses received these documents. As to those e-mail addresses that

2

did not accept service on my first attempt, I then served such e-mail addresses a second time, and determined, again by reviewing Delivery Receipts from RPost, which e-mail addresses accepted service on this attempt.

6. I then identified any Infringing Websites that did not match any of the successfully-served e-mail addresses. I visited each of these remaining websites, and collected e-mail addresses that were posted on the websites (*e.g.*, for "customer service"). I then served each of these "customer service" e-mail addresses by registered e-mail, and determined, again by reviewing Delivery Receipts from RPost, which e-mail addresses accepted service.

7. I then identified those Infringing Websites that did not provide any of the successfully-served e-mail addresses in their WhoIs registration information, did not use these e-mail addresses during interactions with the NFL's outside investigators, and did not list these e-mail addresses on the website itself. I attempted to provide specific notice to each of these remaining websites by submitting a message into the website's contact form, typically located on the website "Contact" page, explaining that the operator of the website was a Defendant in this action, and explaining how to obtain the papers already filed in this action. I successfully provided additional notice to 31 Infringing Websites using this method.

8. To summarize these steps in total, I have confirmed that the 638 e-mail addresses listed in **Exhibit 1**, covering 1,249 Infringing Websites, which were collected either from Defendants' WhoIs information or by visiting and/or interacting with the Infringing Websites listed in Schedule A to the Complaint, each accepted service. The additional e-mail addresses that I gathered by visiting the Infringing Websites themselves are bolded in this exhibit. The non-bolded e-mail addresses in this exhibit were previously collected by the NFL's outside

3

investigators (from WhoIs Information or by interacting with the Infringing Websites and their operators), and were listed in Exhibit 3 to the Order.

9. Attached hereto as **Exhibit 2** are true and correct copies of Delivery Receipts that I received from RPost concerning each attempted service by e-mail.

10. I successfully specifically served each of the 1,280 Infringing Websites listed in **Exhibit 3** hereto either (1) by registered e-mail at an e-mail address listed in the website's WhoIs Information, (2) by registered e-mail at an e-mail address obtained by interacting with the website and/or its operators, or (3) by submitting a message through the website's contact form. (As noted, this last category covered 31 of the 1,280 Infringing Websites.)

11. There are 196 other Infringing Websites not included in Exhibit 3 that were listed in Schedule A to the Complaint. Attached hereto as **Exhibit 4** are true and correct copies of 10 representative samples of these 196 Infringing Websites, preserved by the NFL's outside investigators, which show that each of these Infringing Websites is advertising and offering to sell products bearing the NFL Marks (as defined in the Complaint). If it would please the Court, we are prepared to bring copies of all 196 such Infringing Websites to the Order to Show Cause hearing. Each of these Infringing Websites uses the NFL Marks and the NFL's proprietary images and designs. In addition, 130 of these 196 Infringing Websites are located at domain names that infringe upon the NFL Marks. Again, to be clear, as noted in paragraph 3, above, it is the NFL's postion that all of the Defendants have been served.

12. To date, no Defendant has appeared or responded to the NFL's moving papers. Any such response was required to be served on the NFL's counsel before 5:00 p.m. on April 22, 2013.

4

13. For the Court's convenience, attached as **Exhibit 5** are two representative, unsealed Preliminary Injunction Orders that were entered in this Court in similar actions brought against defendants operating large networks of infringing websites where plaintiffs served defendants by e-mail.

The first such order, issued by Judge Griesa in *Burberry Limited v. John Doe 1 a/k/a Hai Chen*, No. 12-cv-8815 (S.D.N.Y. Dec. 20, 2012), preliminarily enjoined John Doe defendants operating hundreds of websites, including 345 cybersquatted websites, that were offering for sale and selling counterfeit Burberry products, following service of these defendants by e-mail. The *Burberry* Court further ordered that these infringing websites be transferred to plaintiff's control, and that plaintiff could post further notice of the action on defendants' website domains that had been transferred to plaintiff's control.

The second such order, entered by Judge Swain in *The North Face Apparel Corp. v. Jun Song, d/b/a TNF Supplier*, No. 10-cv-5604 (S.D.N.Y. Aug. 6, 2010), preliminarily enjoined defendants that operated a large, fluid network of 130 websites offering for sale and selling counterfeit North Face products, following service of these defendants at only 10 e-mail addresses.

**Service of Third Parties**

14. On April 18, 2013, I e-mailed the Order to PayPal, Inc. ("PayPal"). In addition, on April 19, 2013, the NFL served PayPal with the Order by personal service.

15. On April 19, 2013, I attempted to contact PayPal's legal department by e-mail and telephone regarding the Order, to confirm that PayPal is taking steps to comply with the Order, but my e-mails, calls, and voicemails were not answered or responded to.

16.     On April 18, 2013, I e-mailed the Order to Afilias USA, Inc. ("Afilias"). In addition, on April 19, 2013, the NFL served Afilias with the Order by personal service.

17.     On April 19, 2013, I received a telephone call from an account manager at Afilias, who confirmed that Afilias had received the Order and was in the process of complying with the Order.

18.     On April 18, 2013, I e-mailed the Order to Neustar, Inc. ("Neustar"). In addition, on April 19, 2013, the NFL served Neustar with the Order by personal service.

19.     On April 19, 2013, I received an e-mail from a legal analyst at Neustar, who confirmed that Neustar had received my e-mail and would comply with the Order. On April 19, 2013, Neustar confirmed that it had complied with the Order and disabled the Infringing Websites identified in Exhibit 1 to the Order that were located at a .biz or .us domain suffix.

20.     On April 18, 2013, I e-mailed the Order to the Public Interest Registry ("PIR"). In addition, on April 19, 2013, the NFL served PIR with the Order by personal service.

21.     On April 18, 2013, I e-mailed the Order to VeriSign, Inc. ("VeriSign"). In addition, on April 19, 2013, the NFL served VeriSign with the Order by personal service.

22.     On April 19, 2013, I telephoned VeriSign's Senior Corporate Counsel, and confirmed that Verisign had received my e-mail and would comply with the Order. On April 22, 2013, VeriSign's Senior Corporate Counsel e-mailed me to confirm that the Infringing Websites located at .com and .net domain suffixes should be disabled by being placed on registry lock and hold. I confirmed that VeriSign should proceed accordingly.

I declare under penalty of perjury that the foregoing is true and correct.  Executed April 23, 2013 in New York, NY.

_____
JEFFREY H. WARSHAFSKY