Bradley I. Ruskin
*bruskin@proskauer.com*
Jeffrey H. Warshafsky
*jwarshafsky@proskauer.com*
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Phone: (212) 969-3000
Facsimile: (212) 969-2900

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| THE NATIONAL FOOTBALL LEAGUE; and NFL PROPERTIES LLC, | : | No. 13-CV-2572 (LGS) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | **MEMORANDUM OF LAW IN** |
| | : | **SUPPORT OF PLAINTIFFS'** |
| GONG SUNMEI d/b/a NFL-2013.COM; WENG | : | **APPLICATION FOR A** |
| DONG d/b/a | : | **SUPPLEMENTAL ORDER** |
| NEWYORKGIANTSPROSHOP.COM; SU | : | |
| DANDAN d/b/a NFLGOODSHOP.COM; | : | |
| XIONGJIN CHEN d/b/a | : | |
| NFLNIKEJERSEYSM.COM; MA QIFENG d/b/a | : | |
| 2013-NEW-JERSEYS.COM, *et al.*, | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS ..................................................................................................1

    A)    Factual and Procedural History................................................................1

    B)    Defendants Are Operating Additional Infringing Websites and Continue to Advertise, Offer to Sell, and Sell Counterfeit Products............................................3

ARGUMENT .......................................................................................................................13

    A)    The Court Should Order the Domain Registries to Disable and then Transfer to the NFL the Domain Names Used in Conjunction with the Newly-Detected Infringing Websites ....................................................14

    B)    The Court Should Order Financial Account Holders to Locate, Restrain, and then Release to the NFL All Assets Connected to the Newly-Detected Infringing Websites....................................................15

    C)    The Court Should Permit the NFL to Continue to Serve Defendants Using Registered Electronic Mail ....................................................17

CONCLUSION....................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Burberry Limited (US) v. John Doe 1 a/k/a Lin Jian Yu*, No. 1:11-cv-08306 (TPG)
(S.D.N.Y. Feb. 15, 2013) ........................................................................16

*Burberry Limited (US) v. John Doe 1 a/k/a Qiao Renfeng*, No. 12-cv-00479 (TPG)
(S.D.N.Y. Mar. 1, 2013) .........................................................................16

*Deckers Outdoor Corp. v. Liyanghua*,
No. 11-cv-7970 (N.D. Ill. May 22, 2012) .................................................17

*Deckers Outdoor Corp. v. Does 1-100 d/b/a the aliases identified on Schedule A*, No.
1:12-cv-09285 (N.D. Ill. Mar. 6, 2013) ...................................................17

*Richemont International SA v. Tony Chen d/b/a cartierreplicawatch.us*,
No. 1:12-cv-06689 (WHP) (S.D.N.Y. May 31, 2013) ...................................15

*The National Football League v. Chen Cheng d/b/a nfljerseydiscount.com*,
No. 1:11-cv-0344 (WHP) (S.D.N.Y. Dec. 7, 2011) ...............................14, 15

*Tory Burch LLC v. Does 1-100 d/b/a the aliases identified on Schedule A*, No. 1:12-cv-
07163 (N.D. Ill. Jan. 29, 2013) ...............................................................17

STATUTES

15 U.S.C. § 1114 ..............................................................................................2

15 U.S.C. § 1117 ..............................................................................................2

15 U.S.C. § 1117(c)(2) ......................................................................................2

15 U.S.C. § 1117(d) ..........................................................................................2

15 U.S.C. § 1125(d)(1) ......................................................................................2

## PRELIMINARY STATEMENT

Notwithstanding the entry of a Default Judgment and Permanent Injunction against them, Defendants continue to violate flagrantly the law using newly discovered "rogue" websites. Since entry of the Judgment, Plaintiffs the National Football League and NFL Properties LLC (collectively, the "NFL") have identified thousands of "rogue" websites operated by Defendants that have sold infringing NFL goods and, in certain instances, used NFL marks in their underlying domain names.  In accordance with provisions provided for by the Court to address this very concern and situation, the Court entered Supplemental Orders on August 13, 2013, December 16, 2013, and April 1, 2014 extending the relief granted in the Default Judgment and Permanent Injunction Order to 1,331, 834, and 815 such additional "rogue" websites, respectively.  Plaintiffs request that this Court enter a fourth Supplemental Order against Defendants concerning 760 newly-detected "rogue" websites that Defendants are now operating. The NFL's instant [Proposed] Supplemental Order contains precisely the same relief as the prior Supplemental Orders.

## STATEMENT OF FACTS

### A)      Factual and Procedural History

The NFL filed this action on April 18, 2013 because Defendants were manufacturing, importing, distributing, advertising, offering for sale and/or selling, via the Internet, goods bearing counterfeit reproductions of the NFL's federally registered trademarks and/or federally registered trademarks owned by one of the thirty-two (32) Member Clubs that form the NFL, as identified in the NFL's Complaint and Amended Complaint in this action and incorporated herein by reference (collectively, the "NFL Marks").  The NFL Marks are owned and/or controlled by the NFL and used in connection with products listed in the NFL's Complaint and

Amended Complaint in this action and incorporated herein by reference (collectively, the "NFL Products").  (*See* Dkt. 10; Dkt. 36).

On June 28, 2013, Defendants having failed to appear in this action, the Court entered a Default Judgment and Permanent Injunction Order (the "Default Judgment and Permanent Injunction Order") against all Defendants.  (*See* Dkt. 48).  The Court found that Defendants unlawfully operated a network of "rogue" websites (the "Infringing Websites"), including but not limited to the 1,997 Infringing Websites identified in Exhibit 1 to the Default Judgment and Permanent Injunction Order.  Using the Infringing Websites, the Court found Defendants had advertised, offered to sell, and sold counterfeit products—including, *inter alia*, football jerseys, headwear, collectibles, other apparel and/or other merchandise—bearing counterfeits of the NFL Marks ("Counterfeit Products") to United States consumers.  (*Id.* at 3).  The Court also determined that many of the Infringing Websites were located at domain names that contained one or more NFL Marks.  (*Id.* at 3-4).  Therefore, the Court held each Defendant liable for willful federal trademark counterfeiting and infringement under 15 U.S.C. §§ 1114, 1117 and willful cybersquatting under 15 U.S.C. § 1125(d)(1), and awarded the NFL maximum statutory damages against all Defendants under 15 U.S.C. § 1117(c)(2) and 15 U.S.C. § 1117(d), totaling $273,300,000.  (*Id.* at 4, 6).  In addition, the Court permanently enjoined Defendants from, *inter alia*, manufacturing, importing, distributing, advertising, offering for sale, and/or selling goods bearing the NFL Marks, and registering or operating websites that infringe the NFL Marks.  (*Id.* at 4-5).

The NFL served Defendants with the Default Judgment and Permanent Injunction Order on June 28, 2013 and put all Defendants on notice of the Order.  (*See* Dkt. 55 at 3).  On August 13, 2013, finding that Defendants had violated the Default Judgment and Permanent Injunction

2

Order, the Court issued a Supplemental Order that extended the relief granted in the Default Judgment and Permanent Injunction Order to 1,331 newly-detected Infringing Websites. (*See* Dkt. 55). The Court has since entered two more Supplemental Orders, finding on each occasion that Defendants had continued to violate the Default Judgment and Permanent Injunction Order, and extending the relief granted to the 834 newly-detected Infringing Websites identified as of December 16, 2013 and the 815 newly-detected Infringing Websites identified as of April 1, 2014. (*See* Dkt. 63; 73). All 4,977 of the previously-detected Infringing Websites have been disabled and no longer sell Counterfeit Products. (*Id.*).

Not surprisingly, though, the NFL has not received any payment directly from Defendants in satisfaction of the $273,300,000 default judgment entered against all Defendants by this Court. (August 6, 2014 Declaration of Bradley I. Ruskin ("Ruskin Decl.") ¶ 6). To date, the NFL has collected assets only from Defendants' PayPal, Inc. ("PayPal") accounts that were seized in accordance with the Asset Restraining Orders entered during the pendency of this action and additional accounts seized in connection with the August 13, 2013, December 16, 2013, and April 1, 2014 Supplemental Orders. (*Id.* ¶ 7). These assets are a mere fraction of the total monies owed by Defendants to the NFL. (*Id.*).

**B)    Defendants Are Operating Additional Infringing Websites and Continue to Advertise, Offer to Sell, and Sell Counterfeit Products**

Despite the NFL's efforts to enforce the Default Judgment and Permanent Injunction Order and the subsequently-entered Supplemental Orders, Defendants have continued selling Counterfeit Products by creating and operating additional Infringing Websites. The NFL's investigators have recently detected 760 such Infringing Websites (the "Newly-Detected Infringing Websites"), from which Defendants have advertised, offered to sell, and/or sold Counterfeit Products to United States consumers within the past six months. (August 5, 2014

Declaration of Paul Dagum ("Dagum Decl.") ¶ 11, Ex. 1; August 5, 2014 Declaration of Julian Grijns ("Grijns Decl.") ¶¶ 15-23).

Like the previously-detected Infringing Websites, Defendants intentionally designed the Newly-Detected Infringing Websites to convince unknowing consumers that the websites are authorized to sell genuine NFL Products.  (Dagum Decl. ¶ 13; Grijns Decl. ¶ 16).  To this end, Defendants have continued to copy and use the NFL's proprietary images and designs, including the NFL Marks.  (*Id.*).  The Newly-Detected Infringing Websites continue to be sophisticated-looking, be written in English, accept payment in U.S. currency, and accept payment through PayPal, Western Union, and/or major credit cards.  (*Id.*).  Defendants attempt to make the Newly-Detected Infringing Websites appear legitimate by offering live customer service and by displaying logos that consumers associate with secure and legitimate websites, such as the VeriSign® and McAfee® Security logos.  (*Id.*).  To further induce consumers into purchasing Counterfeit Products from Defendants, rather than authentic NFL Products from the NFL, its Member Clubs, or its business partners, Defendants offer their Counterfeit Products at low prices, which they justify by claiming that their products are "clearance" or "wholesale" items.  (*Id.*).  In addition, both to appear legitimate and to generate higher rankings on Internet searches for "NFL jerseys" and similar searches, Defendants have located many of the Newly-Detected Infringing Websites at domain names containing the NFL Marks.  (*Id.*).

Each of the Newly-Detected Infringing Websites currently is active, or was active within the past six months.  (Dagum Decl. ¶ 14).  For several reasons, however, the NFL's outside investigators just recently detected these Newly-Detected Infringing Websites.  First, Defendants have continued to go to great lengths to conceal the interrelationships between their Infringing Websites (as discussed in greater detail in the NFL's April 18, 2013 Memorandum of Law),

thereby limiting or delaying the NFL's outside investigators' ability to link certain "rogue" websites to Defendants.  (Dagum Decl. ¶ 14; Dkt. 12 at 26-29).  Second, many of the Newly-Detected Infringing Websites first became active after the previously-detected Infringing Websites were disabled.  (Dagum Decl. ¶ 14).  Third, when these newly-activated Infringing Websites became active, and/or when the content on active, undetected Infringing Websites was modified, more data generated by Defendants was published to the Internet and, using this newly-collected data, the NFL's outside investigators were able to even more precisely refine their "fingerprint" for Defendants' Infringing Websites and thereby positively link additional Infringing Websites to Defendants.  (*Id.*).  Accordingly, the NFL has just recently obtained enough data to conclude positively that each Newly-Detected Infringing Websites meets the criteria of an "Infringing Website" (as defined in paragraph 42 of the NFL's Amended Complaint), namely that each Newly-Detected Infringing Website (i) is a "rogue" website that uses the NFL Marks without the NFL's permission to advertise, offer to sell, and/or sell Counterfeit Products, and (ii) is operated by the Defendants in this action.  (*Id.*).  To guarantee that no legitimate websites authorized to sell NFL Products were included among the Newly-Detected Infringing Websites, as an added precaution, the NFL's outside investigators visited every Newly-Detected Infringing Website and reviewed the WhoIs Information for every Newly-Detected Infringing Website.  (Dagum Decl. ¶ 12).

Although some of the Newly-Detected Infringing Websites are not currently active, Defendants most likely are "warehousing" the domain names for the Newly-Detected Infringing Websites that are no longer active so that, should the currently active Newly-Detected Infringing Websites be disabled (*e.g.*, by a court order), Defendants will be able to continue to seamlessly shift their operation to the "warehoused" domain names.  (Dagum Decl. ¶ 15).

The NFL's outside investigators have collected irrefutable evidence of Defendants' willful disregard of the injunctive orders issued in this action.  For example, the NFL's outside investigators recently contacted the Defendant or Defendants that had operated uswholesalejerseystore.com, one of the 1,997 Infringing Websites that was disabled and transferred to the NFL in 2013 in accordance with the Default Judgment and Permanent Injunction Order.  (Grijns Decl. ¶ 19).  The investigators originally had communicated with the operator(s) of this Infringing Website in Spring 2013, in order to purchase a Counterfeit Product from uswholesalejerseystore.com.  (*Id.*, Ex. 2).  At that time, the operator(s) of this Infringing Website had used the e-mail address cheapwholesaler01@hotmail.com and the alias "Helen." (*Id.*, Ex. 2).  In July 2013, the investigators again contacted "Helen" at the same e-mail address (*i.e.*, cheapwholesaler01@hotmail.com), and inquired whether "Helen" was still selling jerseys, noting that the uswholesalejerseystore.com website no longer was functional.  (Grijns Decl. ¶ 19).  "Helen" directed the investigators to stitchedchina.com, which the NFL subsequently disabled pursuant to the Court's December 16, 2013 Supplemental Order.  (*Id.*).  In March 2014, the investigators contacted "Helen" once again at the cheapwholesaler01@hotmail.com e-mail address, noting that stitchedchina.com was not working.  (*Id.*).  Someone named "Jaly" responded and directed the investigators to jerseyspromise.com, which the NFL subsequently disabled pursuant to the Court's April 1, 2014 Supplemental Order.  (*Id.*).  In July 2014, the investigators again contacted "Jaly" at the cheapwholesaler01@hotmail.com e-mail address, noting that jerseyspromise.com was not working.  (*Id.*).  "Jaly" then directed the investigators to nfljerseyscheapchina.us.  Screenshots of the e-mail messages from July 2014 are below.  (*Id.*, Ex. 2).



Similarly, the NFL's outside investigators recently contacted the operator of

nflgoodshop.com, another one of the Infringing Websites that was disabled in accordance with

the Default Judgment and Permanent Injunction Order.  (Grijns Decl. ¶ 20, Ex. 3).  When the

investigators originally communicated with the operator, he used the email address

nflgoodshop@hotmail.com and the alias "Jack." (*Id.*, Ex. 3).  When nflgoodshop.com was

disabled in Summer 2013, "Jack" directed the investigators to order jerseys from

topjerseysshop.com. (Grijns Decl. ¶ 20).  Pursuant to the Court's August 13, 2013 Supplemental

Order, topjerseysshop.com was disabled in August 2013.  The NFL's outside investigators

contacted "Jack" in March 2014, and "Jack" directed the investigators to a new website,

wholesalebestshop.com.  (*Id.*).  Pursuant to the Court's April 1, 2014 Supplemental Order,

wholesalebestshop.com was disabled in April 2014.  The NFL's outside investigators contacted

"Jack" in July 2014, and "Jack" directed the investigators to a new website, topgoodshop.com.

Screenshots of the e-mail messages from July 2014 are below.  (*Id.*).

7

To: 伟郑 <nflgoodshop@hotmail.com>                    Tue, Jul 22, 2014 at 3:31 PM

Hi Jack,

wholesalebestshop.com isn't working. Do you have any jerseys for sale on a different website? I'd like to buy one
before the season starts. Thanks ▮▮▮▮▮▮
[Quoted text hidden]

伟郑 <nflgoodshop@hotmail.com>                        Wed, Jul 23, 2014 at 6:16 AM
To: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

This is our new website: www.topgoodshop.com
You can order, thank you
jack

Date: Tue, 22 Jul 2014 15:31:51 -0400
Subject: Re: Thank you for your order
From: ▮▮▮▮▮▮▮▮▮▮▮
To: nflgoodshop@hotmail.com
[Quoted text hidden]

 

The NFL's investigators visited topgoodshop.com (the Newly-Detected Infringing

Website that "Jack" was directing them to in order to purchase "NFL" jerseys in July 2014), and

observed that it was virtually identical to nflgoodshop.com, topjerseysshop.com, and

wholesalebestshop.com, the previously-detected Infringing Websites that had been disabled by

this Court's Orders.  (Grijns Decl. ¶ 21).  The homepages from nflgoodshop.com (the first

version of the Infringing Website) and topgoodshop.com (the most recent version and one of the

Newly-Detected Infringing Websites) are provided below.  (*Id.* ¶ 21, Ex. 4).

**nflgoodshop.com – previously-detected Infringing Website**



9

**topgoodshop.com – Newly-Detected Infringing Website**



A comparison of these screenshots and others annexed to the Grijns Declaration demonstrates that each time the NFL has disabled Infringing Websites, the Defendants have resurrected this particular website at a new, similar domain name.  For example, on the nflgoodshop.com Infringing Website, a "Nike Detroit Lions 91# Riley Reiff Blue elite Jersey" that the NFL's investigators purchased in Spring 2013 was offered for sale at www.nflgoodshop.com/ **Nike-Detroit-Lions-91--Riley-Reiff-Blue-elite-Jersey-30814**/.  Once that domain was disabled, the Defendants offered this same type of jersey for sale at www.topjerseysshop.com/ **Nike-Detroit-Lions-91--Riley-Reiff-Blue-elite-Jersey-30814**/.  (*Id.*). Once that domain was disabled, the Defendants offered this same type of jersey for sale at www.wholesalebestshop.com/**Nike-Detroit-Lions-91--Riley-Reiff-Blue-elite-Jersey-30814**. Defendants currently are offering the same type of jersey for sale at www.topgoodshop.com/**Nike-Detroit-Lions-91--Riley-Reiff-Blue-elite-Jersey-30814**. (*Id.*).  It appears that Defendants have continued to sell Counterfeit Products on topgoodshop.com (and its predecessors) with little interruption to their business.

As further evidence of Defendants' continued sale of Counterfeit Products, Defendants have sent the investigators numerous unsolicited promotional e-mails that identify Newly-Detected Infringing Websites and, in many cases, offer discounts for repeat and bulk purchasers of counterfeit NFL jerseys.  (*Id.* ¶ 22, Ex. 5).  Below is an unsolicited e-mail from Defendants concerning jerseys for sale at www.shopallhere.com.  (*Id.* Ex. 5).



In sum, the investigators have confirmed that Defendants are continuing to advertise, offer to sell, and/or sell Counterfeit Products using the Newly-Detected Infringing Websites. (Grijns Decl. ¶¶ 15-23; Dagum Decl. ¶¶ 11-18).

The investigators have determined that Defendants are using additional, newly-detected e-mail addresses and aliases.  (Dagum Decl. ¶¶ 11, 18).  The investigators identified 504 unique e-mail addresses that are directly linked to Defendants' Newly-Detected Infringing Websites. (*Id.* ¶ 18).  Each Newly-Detected Infringing Website is associated with at least one of these 504

e-mail addresses.  (*Id.*).  Of these e-mail addresses, 110 e-mail addresses already were associated with Defendants' previously-detected Infringing Websites, which is consistent with Defendants' interrelatedness and Defendants' use of multiple aliases.  (*Id.*).  Correspondingly, the investigators have identified a total of 394 newly-detected e-mail addresses that are associated with Defendants and the Newly-Detected Infringing Websites.

## ARGUMENT

The NFL respectfully requests that the Court enter a Supplemental Order recognizing the Newly-Detected Infringing Websites as "Newly-Detected Infringing Websites," as defined in the Default Judgment and Permanent Injunction Order, and extending the application of relief granted therein to the Newly-Detected Infringing Websites.  Specifically, the NFL is seeking (i) an Order that the domain names used in conjunction with the Newly-Detected Infringing Websites be disabled and then transferred to the NFL, and (ii) an Order finding that the newly-detected aliases, e-mail addresses, and Infringing Websites described above are connected to Defendants, and directing any financial account holder controlling any monies or accounts associated with Defendants' newly-detected aliases, e-mail addresses, and/or Infringing Websites, to locate and restrain such assets, and then release such assets to the NFL in partial satisfaction of the judgment still owed to the NFL.  This is precisely the relief that the Court prospectively authorized the NFL to seek in the event that the NFL detected additional Infringing Websites, and precisely the relief that the Court granted in the previously-entered Supplemental Orders on nearly identical facts.  (*See* Default Judgment and Permanent Injunction Order, Dkt. 48, at 6-9; August 13, 2013 Supplemental Order, Dkt. 55, at 5-7; December 16, 2013 Supplemental Order, Dkt. 63, at 5-8; April 1, 2014 Supplemental Order, Dkt. 73, at 5-8).

13

**A)**     **The Court Should Order the Domain Registries to Disable and then Transfer to the NFL the Domain Names Used in Conjunction with the Newly-Detected Infringing Websites**

As described above, all of the Newly-Detected Infringing Websites have been conclusively linked to Defendants and the previously-detected Infringing Websites, and many of these Newly-Detected Infringing Websites have been advertising, offering to sell, and selling Counterfeit Products during the pendency of this action and/or in the months since the Court entered the Default Judgment and Permanent Injunction Order.  (Dagum Decl. ¶¶ 11, 14; Grijns Decl. ¶¶ 15-23).  Unless all of the domain names used in conjunction with these websites are disabled and transferred to the NFL, including any "warehoused" domain names, Defendants will continue to use the Newly-Detected Infringing Websites in order to deceive United States customers into purchasing Counterfeit Products.  (Dagum Decl. ¶¶ 15-17).

As noted, in this very case, the Court has granted the NFL supplemental orders to disable and transfer to the NFL a total of 2,980 newly-detected Infringing Websites that Defendants operated in violation of the Default Judgment and Permanent Injunction Order.  (*See* Dkt. 55 at 5; Dkt. 63 at 6; Dkt. 73 at 6).  The NFL is seeking *identical* relief in the instant [Proposed] Supplemental Order.

Furthermore, as this Court is aware, in other cases with highly similar facts, Courts in this District have granted the same relief the NFL is seeking.  For example, in a prior action brought by the NFL involving "rogue" websites selling Counterfeit Products, the Court found that the "Defendants [had] disregarded the Default Judgment and Permanent Injunction by continuing to sell Counterfeit NFL Products at [208 newly-detected infringing websites], located at various newly detected domain names," and therefore ordered that these domain names be disabled and then transferred to the NFL.  *See The National Football League v. Chen Cheng d/b/a*

14

*nfljerseydiscount.com*, No. 1:11-cv-0344 (WHP) (S.D.N.Y. Dec. 7, 2011).[1]  More recently, this

Court relied on precisely the same advanced "rogue" website identification and clustering

technology used by the NFL's outside investigators in this action, and ordered that the domain

names used in conjunction with 2,706 newly-detected "rogue" websites be disabled and

transferred to plaintiffs.  *See Richemont International SA v. Tony Chen d/b/a*

*cartierreplicawatch.us*, No. 1:12-cv-06689 (WHP) (S.D.N.Y. Mar. 1, 2013).

Accordingly, the NFL respectfully requests that the Court order the domain registries to

disable the domain names used in conjunction with the Newly-Detected Infringing Websites and,

except for any domain names that Defendants timely and properly show should be excluded from

the Court's Order, transfer these domain names to the NFL.

> **B)   The Court Should Order Financial Account Holders to Locate, Restrain, and then Release to the NFL All Assets Connected to the Newly-Detected Infringing Websites**

As noted above, Defendants have not directly paid any portion of the large judgment

entered against them.  Given Defendants' repeated and ongoing disregard for this Court's

authority, it is extremely unlikely that Defendants ever will voluntarily do so.  For this reason,

the NFL will be able to collect the monies owed to it by Defendants only by locating, restraining,

and collecting assets belonging to or controlled by Defendants that are currently within the

control of financial account holders that will respect this Court's authority.  But the NFL's ability

to do this is hindered by Defendants' extensive efforts to conceal their identities and to hide and

disperse their assets in numerous financial accounts.

Therefore, the NFL respectfully requests a Supplemental Order finding that the newly-

detected aliases, e-mail addresses, and Infringing Websites identified in Exhibit 1 to the August

---

[1] Copies of this unpublished opinion and the other unpublished opinions cited below are attached as Exhibit 1 to the Declaration of Bradley I. Ruskin.  (Ruskin Decl. ¶ 8, Ex. 1).

5, 2014 Declaration of Paul Dagum, one of the NFL's outside investigators, belong to, or are being used or controlled by, Defendants.  The NFL also respectfully requests an Order directing financial account holders receiving notice of the Supplemental Order (and the Default Judgment and Permanent Injunction Order) to search for any monies or accounts associated with Defendants' newly-detected aliases, e-mail addresses, and/or Infringing Websites ("Newly-Detected Assets"), and then to release those Newly-Detected Assets to the NFL.

Again, this is *identical* to the relief granted in the Court's Supplemental Orders entered on August 13, 2013, December 16, 2013, and April 1, 2014.  (*See* Dkt. 55 at 6-7; Dkt. 63 at 6-7; Dkt. 73 at 6-7).

Additionally, in other cases involving the sale of counterfeit products via "rogue" websites, courts have authorized plaintiffs to collect assets linked to newly-detected "rogue" websites in partial satisfaction of a default judgment.  For example, in two cases involving the sale of counterfeit Burberry products on "rogue" websites, this Court entered supplemental orders finding that (i) the Defendants had failed to satisfy the full payment of monies owed to plaintiffs under the default judgment entered against them, and (ii) that defendants were operating additional "rogue" websites and using additional e-mail addresses, which plaintiffs had connected to the defendants.  *See Burberry Limited (US) v. John Doe 1 a/k/a Lin Jian Yu*, No. 1:11-cv-08306 (TPG) (S.D.N.Y. Feb. 15, 2013) and *Burberry Limited (US) v. John Doe 1 a/k/a Qiao Renfeng*, No. 12-cv-00479 (TPG) (S.D.N.Y. Mar. 1, 2013).  In both of these cases, the Court issued a supplemental order directing third party financial service providers, such as PayPal, that received notice of the supplemental order, to locate, restrain, and transfer to Burberry any monies or assets controlled by that third party that were connected to the

defendants.  *See id.*  Given the highly similar facts presented in this action, the NFL respectfully submits that a similar order is warranted here.

The NFL respectfully requests that the Court order that any Newly-Detected Assets be restrained and then ultimately released to the NFL in accordance with the procedure specified in the Default Judgment and Permanent Injunction Order and in the NFL's [Proposed] Supplemental Order – as noted, this is the exact same procedure detailed in the Court's August 13, 2013, December 16, 2013, and April 1, 2014 Supplemental Orders.  That is, rather than seeking that the Newly-Detected Assets be released to the NFL immediately upon being located, as the plaintiffs sought and the Court ordered in the *Burberry* cases, the NFL is requesting that Defendants be afforded twenty-one days following service of the Supplemental Order upon them to appear in Court and make an evidentiary showing that their monies or accounts should not be released to the NFL.[2]  This will ensure that all Defendants have a reasonable opportunity to contest the application of the Supplemental Order to them and their assets.

**C)     The Court Should Permit the NFL to Continue to Serve Defendants Using Registered Electronic Mail**

In order to ensure adequate notice to Defendants of the Order to Show Cause for Supplemental Order, the NFL plans to serve Defendants with copies of the Order to Show Cause for Supplemental Order, and this Memorandum of Law and supporting papers, at the same e-mail addresses used to notify Defendants of the Default Judgment and Permanent Injunction Order, the August 13, 2013 Supplemental Order, the December 16, 2013 Supplemental Order,

---

[2] The NFL's proposed twenty-one day waiting period before obtaining the Newly-Detected Assets is very conservative compared to waiting periods ordered by other courts.  *See, e.g., Deckers Outdoor Corp. v. Does 1-100 d/b/a the aliases identified on Schedule A*, No. 1:12-cv-09285 (N.D. Ill. Mar. 6, 2013) (releasing funds to plaintiff after ten business days); *Tory Burch LLC v. Does 1-100 d/b/a the aliases identified on Schedule A*, No. 1:12-cv-07163 (N.D. Ill. Jan. 29, 2013) (same); *Deckers Outdoor Corp. v. Liyanghua*, No. 11-cv-7970 (N.D. Ill. May 22, 2012) (same).

and the April 1, 2014 Supplemental Order as well as the additional, newly-detected e-mail addresses listed in Exhibit 1 to the August 5, 2014 Declaration of Paul Dagum.  If the Court grants the NFL's [Proposed] Supplemental Order, the NFL respectfully requests that it be permitted to use this same method of service to notify Defendants of the entry of the Supplemental Order.

## **CONCLUSION**

For the foregoing reasons, the NFL respectfully requests that the Court enter the [Proposed] Supplemental Order.

Dated: August 6, 2014

Respectfully submitted,

By: _____

Bradley I. Ruskin
Jeffrey H. Warshafsky
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036

*Attorneys for the National Football League and NFL Properties LLC*

18